**IT IS ORDERED as set forth below:**



Date: July 19, 2018

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 15-74063-WLH |
| | ) | |
| GEMINA ROCHELLE STROUD, | ) | CHAPTER 13 |
| | ) | |
| Debtor. | ) | JUDGE WENDY L. HAGENAU |
| | ) | |

**ORDER ON APPLICATION FOR FINAL COMPENSATION BY TRUSTEE
AND ATTORNEYS FOR TRUSTEE AND FOR ALLOWANCE OF CLAIM
AS ADMINISTRATIVE EXPENSE PRIORITY**

The Application for Final Compensation by Trustee and Attorneys for Trustee and for Allowance of Claim as Administrative Expense Priority ("Application") [Docket No. 81] came before the Court for hearing, after notice, on June 13, 2018. Neil C. Gordon appeared as the Chapter 7 Trustee and attorney for the Trustee, and Howard D. Rothbloom appeared on behalf of the Debtor. The Application seeks compensation for the Trustee in the amount of $1,716.50 and compensation for Arnall, Golden & Gregory, as counsel for the Trustee, in the amount of $13,607.09 plus $31.59 in expenses. The Debtor objected to the Application [Docket No. 86], arguing the Chapter 7 Trustee was not entitled to compensation because no disbursements were made by the Chapter 7 Trustee in the brief Chapter 7 case and the counsel for the Chapter 7 Trustee

1

should be entitled to little or no compensation because the time spent was neither necessary nor reasonable.

## FACTUAL BACKGROUND

The factual background and procedural history of this case are important to analyzing the Application. The Debtor filed her Chapter 13 petition on December 18, 2015. Her Chapter 13 plan was confirmed on April 15, 2016. The confirmed plan called for the Debtor to make monthly payments of $763 to the Trustee from which the Trustee would pay BMW Financial Services ("BMW") an allowed secured claim of $12,225 at an interest rate of 5.25%, and cure certain arrearages on her home owed to FedEx Employees Credit Union ("FedEx"). The plan also called for the Debtor to pay 100% of the claims of general unsecured creditors. The Debtor owed certain student loans, which under the terms of the plan would be deferred and then repaid directly by the Debtor upon the conclusion of her bankruptcy case. A year later, on April 21, 2017, the Chapter 13 Trustee filed a motion to dismiss the Debtor's Chapter 13 case due to a delinquency in making her plan payments. This motion was resolved with a consent order [Docket No. 36] requiring the Debtor to strictly comply with the terms of the plan for the following 24 months.

On October 9, 2017, FedEx filed a motion for relief from stay [Docket No. 39] in which it alleged the Debtor had failed to make mortgage payments for the period June 1, 2017 through September 1, 2017 at the rate of $759.05 each. The motion represented, consistent with the Debtor's schedules, that the unpaid principal balance of the loan was $51,809.09 while the property was valued at over $105,000. Upon receiving the motion for relief from stay and the allegation regarding significant equity in the Debtor's real property, the Chapter 13 Trustee filed a motion to convert the case to one under Chapter 7 [Docket No. 41] so that a Chapter 7 trustee could liquidate the property for the benefit of the creditors. After FedEx voluntarily reset the hearing several times, an order converting the Chapter 13 case to one under Chapter 7 was entered on January 22,

2

2018 [Docket No. 44]. The motion to convert the case was granted on a "no opposition" basis, meaning the Court did not hear argument with respect to the motion. The Debtor was represented by King & King in her Chapter 13 case and in connection with the Motion to Convert. At the time of conversion, the Debtor was functionally current on her plan payments in light of the consent order previously entered on the Chapter 13 Trustee's motion to dismiss, although there were some small sums owed based on variations in payments. The undisputed testimony of the Debtor, though, was that she had brought with her to the hearing on the motion for relief from stay $3,000 in certified funds to attempt to cure the delinquency with FedEx, which was declined by FedEx as insufficient.

Upon conversion of the case to one under Chapter 7, Neil Gordon was appointed as the Chapter 7 Trustee ("Trustee"). The initial Chapter 7 meeting of creditors was scheduled for February 21, 2018. It was rescheduled to March 7, 2018 when the Debtor did not appear. On March 1, 2018, however, the Trustee was contacted by Howard Rothbloom notifying the Trustee that the Debtor was retaining him as new counsel and would be seeking to reconvert her case to one under Chapter 13. The Debtor contended the conversion to Chapter 7 was based on a mistaken understanding of the amount due to FedEx. King & King filed a notice of intent to withdraw also on March 1, 2018 and Howard Rothbloom filed a substitution of counsel on behalf of the Debtor on March 8, 2018.

After the conversion of the case to one under Chapter 7, BMW filed a motion for relief from stay to repossess the vehicle that was to have been paid under the plan. The motion was granted on March 2, 2018 when no opposition to it was posed. The motion for relief from stay filed by FedEx was rescheduled, again several times, and has not been heard as of the date hereof.

On March 9, 2018, the Debtor filed a motion to reconvert her case to one under Chapter 13 and to reimpose the automatic stay as to all creditors, particularly BMW which had not yet

3

repossessed the Debtor's car. The Debtor filed opposition to FedEx's motion for relief from stay and sought sanctions and attorney's fees and expenses against FedEx on the grounds it was seeking to recover payments in excess of what was permitted, both under the loan documents and under Fed. R. Bankr. P. 3002.1. The Trustee objected to FedEx's motion for relief from stay and also to the Debtor's motion to reconvert. BMW also objected to the Debtor's motion to reconvert and to reimpose the stay.

The Court held an initial hearing on the Debtor's Motion to Reconvert and FedEx's Motion for Relief from Stay on April 12, 2018, at which it heard arguments on the various matters and established a procedure for hearing evidence and resolving the pending motions. An evidentiary hearing was held on April 26, 2018. After this hearing, the Court entered an order on May 15, 2018, granting the Debtor's motion to reconvert the case to one under Chapter 13 and reimposing the automatic stay as to all creditors including BMW.

## LEGAL ANALYSIS

Courts generally view the initial question regarding compensation of a trustee or his professional to be whether the services are properly those of a trustee or those of legal counsel. A Chapter 7 trustee has certain statutory duties as set out in 11 U.S.C. § 704. These duties include, for example, collecting and reducing to money the property of the estate, accounting for all property received, investigating the financial affairs of the debtor, examining proofs of claim, and furnishing information concerning the estate and its administration as requested by any party-in-interest. The duties of the trustee in general can only be performed by the trustee and not by the trustee's professionals, although the trustee's professionals can assist him where satisfying those duties requires legal assistance. See In re Peterson, 566 B.R. 179, 189-90 (Bankr. M.D. TN. 2017). This inquiry can be complicated when, as here, the trustee and trustee's counsel are one and the same. Nevertheless,

4

> The threshold question in distinguishing between [the role of the trustee and the role of the trustee's attorney] is whether the services can be performed legally only with a law license. One court has described the differences in the roles of attorneys and trustees like this:
>
> The purpose of the attorney for the trustee is not to provide assistance to the trustee in the performance of the trustee's statutory duties, <u>but to provide assistance with those services the trustee is unable to perform due to the lack of a license to practice law.</u>

(cites omitted). <u>Gordon v. Walton (In re Hambrick)</u>, 2012 WL 10739279 at *4 (Bankr. N.D. Ga. April 10, 2012) (Emphasis in original).

Once the trustee's services are properly distinguished from legal services, the services are evaluated for their reasonableness. "Reasonable" compensation for trustees and their attorneys is permitted under 11 U.S.C. § 330, for "actual, necessary services rendered by the trustee" or his attorney. 11 U.S.C. § 330(a)(1)(A). Section 330 limits such compensation, however, to that permitted under 11 U.S.C. §§ 326, 328 and 329. Here, the applicable limitation is 11 U.S.C. § 326, which permits a court to allow "reasonable compensation under section 330" for the trustee's services, but not to exceed certain percentages of "all moneys disbursed or turned over in the case by the trustee to parties in interest, … including holders of secured claims." 11 U.S.C. § 326(a). Compensation to a trustee's attorney, however, is not limited by Section 326(a) and is only limited by the requirement that such compensation be reasonable. Reasonableness is determined by applying a lodestar analysis, looking at the hours reasonably spent and the reasonable hourly charge. See <u>Norman v. Housing Authority of the City of Montgomery</u>, 836 F.2d 1292, 1299 (11th Cir. 1988). The courts also review factors such as time and labor, novelty and difficulty of the issues, the requisite skill, the preclusion of other employment, the customary fee, whether the fee is fixed or contingent, the risk incurred, time limitations, the amount involved and the results obtained, the experience, reputation and ability of the counsel, the desirability of the case, the nature and length of the case, and awards obtained in similar cases. <u>Johnson v. Ga. Hwy</u>

5

Exp., 488 F.2d 714 (5th Cir. 1974); In re First Colonial Corp. of Am., 544 F.2d 1291 (5th Cir. 1977); Norman, 836 F.2d 1292; In re Lexington Hearth Lamp & Leisure, LLC, 402 B.R. 135, 141 fn 10 (Bankr. M.D. N.C. 2009).  Moreover, "the burden of proof as to the reasonableness of and entitlement to a fee must be borne by the party seeking the fee". Id. at 141.

The Debtor argues first that the Trustee is entitled to no compensation because the Trustee did not make any disbursements in the case.  The argument is that the award of reasonable compensation to a trustee under Section 330 is limited by Section 326 and Section 326 is based on a percentage of disbursements, so if no disbursements are made, no payment can be made to the Trustee.  The Debtor argues further that even if the Court were to permit payment to a trustee based on *quantum meruit*, the Trustee did not provide any substantial benefit in this case.  The Debtor points out that she had already been in a bankruptcy case for over two years at the time of the conversion and all of her assets had been identified.  She also notes that the motion to reconvert was filed approximately five weeks after the conversion, so very little time had passed and very little action had been taken by the Trustee.  The Trustee, on the other hand, argues that even if he makes no disbursements in a case converted from Chapter 7 to Chapter 13, the Trustee is entitled to compensation based on *quantum meruit*.  The Trustee argues he uncovered the fact that the Debtor had received a prize post-petition when playing Wheel of Fortune and that he had investigated the value of the house.

Judge Sacca, in the case of In re Phillips, 507 B.R. 2 (Bankr. N.D. Ga. 2014), explored the various theories under which Chapter 7 trustees have sought to be compensated when a case has been converted from Chapter 7 to Chapter 13 before any disbursements have been made.  The Court construed Section 326(a) to include the distribution made to the Chapter 13 trustee.  Judge Sacca ruled that the trustee in the Phillips case was entitled to compensation based on actual time spent, because the trustee recovered funds which were transmitted to the Chapter 13 trustee.  But,

6

in the Phillips case, the Court limited the Chapter 7 trustee's compensation to the amount derived from the formula in Section 326(a) as applied to the total amount recovered as Chapter 7 trustee and provided to the Chapter 13 trustee. Id. at 7.

In the case of In re Moore, 235 B.R. 414 (Bankr. W.D. Ky. 1999), the court held that a Chapter 7 trustee "who discovers assets during the debtor's chapter 7 case, which leads to the debtor's conversion of the chapter 7 case to a chapter 13 proceeding" was entitled to compensation. Id. at 415. The Court held that such compensation would be permitted "upon a showing that the trustee has provided substantial services which benefit the estate". Id. at 416. The court contrasted its ruling to the case of In re Woodworth, 70 B.R. 361, 362 (Bankr. N.D. N.Y. 1987) where the trustee was denied fees based on the "minimal services actually performed by the trustee". 235 B.R. at 416. A result similar to Moore was reached in In re Washington, 232 B.R. 814 (Bankr. S.D. Fla. 1999) where the court held that a Chapter 7 trustee who had taken substantial steps during the course of the Chapter 7 case and uncovered assets could be compensated even after a conversion to Chapter 13. The Court held that the "Chapter 7 trustees and their attorneys should be entitled to compensation for services rendered which benefit the bankruptcy estate, if those services are reasonable and necessary." Id. at 816. The court refused to limit the amount to which the trustee would be entitled under Section 326 provided, however, that the trustee performed "substantial services". Id. at 817.

In the case of In re Main Realty & Mgmt., LLC, 277 B.R. 1 (Bankr. D. Conn. 2002), the court noted that trustees always take a risk that they will not be paid when they are appointed the trustee in a bankruptcy case. One of the risks to which trustees are subject is that a case may be converted or dismissed. Id. at p. 3. The facts of the Main Realty case are similar to those here, except that the reconversion in Main Realty was from a Chapter 7 to a Chapter 11 case. The debtor originally filed a Chapter 11 case and was in the case for over a year when the case was converted

7

to Chapter 7. The conversion occurred because the debtor's attorney did not appear at the hearing to oppose it. He stated he thought he had resolved the issue with the United States Trustee. Within three weeks, the debtor's attorney filed a motion to reconvert the case to Chapter 11 and had alerted the Chapter 7 trustee that this Chapter 7 case was expected to be short-lived. The trustee had made no contribution to the case, no creditors meeting was held, no assets were discovered, and no avoidance actions were instigated. Id. at 4. Most of the trustee's time had been spent investigating whether there was equity in the debtor's property. Id. The Court concluded that although the trustee did what the trustee was supposed to do, the trustee's services "do not rise to the level of actual value or potential benefit to the debtor or its creditors sufficient to warrant *quantum meruit* compensation". Id. at 5.

In this case, the Court concludes the Trustee is not entitled to compensation. If the Court were to adopt the strictest reading of Sections 330 and 326, the Trustee would receive no fee. The Trustee did not disburse any funds to anyone and in fact never came into possession of any funds. Therefore, any reasonable compensation to which the Trustee would otherwise be entitled would be capped by the distribution of zero and the Trustee would receive no funds. Even if the Court were to follow the cases that permitted a trustee to recover fees on a *quantum meruit* basis, the Court finds on the facts of this case that the Trustee's services, while required of him as a trustee, do not rise to the level of providing any substantial benefit to the estate or to the creditors. The fee application filed by the Trustee seeks $1,716.50 in compensation for his time and that of his paraprofessionals. All of the time is related to preparation for the 341 meeting and a property inspection. These are customary and statutory duties of the Trustee. The Debtor's property was known and the Debtor did not dispute there was substantial equity in it. The prize winnings occurred post-petition and were not necessary to the Chapter 13 case because it proposed to pay creditors 100%. The Trustee fulfilled his duties, but did not provide a benefit to the estate. This

8

is simply not a case where the Court can find that the Trustee's efforts with regard to the case support a *quantum meruit* award.

The Court reviewed the Application for compensation for the attorney for the Trustee both as to whether the services were legal in nature and as to the reasonableness of the fees. In its review, the Court sees that a number of the entries are more in the nature of trustee services than legal services. For example, talking to the counsel for FedEx regarding resetting a hearing does not require particular legal skill. See Lexington Hearth, 402 B.R. at 144; Peterson, 566 B.R. at 194. Even reviewing a motion for relief from stay and deciding whether the Trustee might want to oppose it does not require an attorney. The Trustee is fully capable of making that determination. See Peterson, 566 B.R. at 193. Similarly, it is within the Trustee's duty to have reviewed and considered correspondence from the Debtor's attorney about the threat to file a motion to reconvert. Lexington Hearth, 402 B.R. at 144. Before the Trustee can retain an attorney to represent him, the Trustee must make some determination of his own about the facts in his case and whether it supports retention of an attorney. The Court notes entries in the Application for calendaring hearing dates, for reviewing the realtor's inspection report and comparative marketing analysis, and for reviewing the claims register, the schedules and the plan. Time spent reviewing the claims register or reviewing the Debtor's schedules or the Debtor's budget or determining the feasibility of the Chapter 13 plan or investigating the Debtor's property do not require legal analysis. Id. See also Hambrick, 2012 WL 10739279 *5  Based on the Court's review of the Application submitted by the attorneys, the Court finds that approximately $10,000 of it is actually for legal services, while the remaining $3,575.50 is for trustee services and not allowable under the analysis discussed above

With respect to the balance of $10,000, the Court notes that approximately $4,000 was spent on legal efforts other than the reconversion of the case, including the application to retain

9

the attorney, preparing and filing a notice of bankruptcy in the real estate records to protect the Debtor's real property, opposing the FedEx motion for relief from stay, and evaluating the BMW motion relief from stay. The Court notes the Debtor did not file any opposition to the FedEx motion for relief from stay until April 6, and the Debtor filed no opposition to the BMW motion for relief from stay so efforts by the Trustee's attorney on this were reasonable and necessary.

In evaluating the remaining $6,000 in fees spent on the motion to reconvert, the question for the Court is whether those fees are for actual and necessary services. The Court does not quarrel with the hourly rate of the Trustee and his paraprofessionals nor with the skill and knowledge of the Trustee. The Court recognizes that there could legitimately be some difference of opinion as to whether the Court could reconvert a case from Chapter 7 to Chapter 13 and the Trustee's opposition to the motion to reconvert was not wholly unfounded. But, in reviewing the reasonableness of compensation, the Court must be mindful "that estates [must] be administered as efficiently as possible". First Colonial, 544 F.2d at 1299. Here, the Debtor's Chapter 13 plan was current at the time of the conversion, her plan proposed to pay all of her unsecured creditors in full, both BMW and FedEx were adequately and fully represented in the case by counsel, so the Court questions why the Trustee needed to be the one to incur so much time and legal expense in opposing the motion. The Court appreciates hearing from a trustee as to concerns the trustee may have about a conversion, but particularly where the parties in interest are adequately represented or unharmed, there is no reason for the trustee to duplicate that work.

Upon review of all of the facts, the Court finds that the compensation for attorneys for the Trustee in responding to the motion to reconvert should be reduced by half, and allowed in the amount of $3,000. Therefore, the award for attorneys for the Trustee is in the amount $7,000 plus the expenses requested of $31.59.

10

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED that the Application for the Trustee is denied;

ORDERED FURTHER that the Application for the attorneys for the Trustee is allowed to the extent of $7,000 which shall be an administrative expense claim in the Debtor's Chapter 13 case.

### ### END OF ORDER ###

**DISTRIBUTION LIST**

Gemina Rochelle Stroud
313 Deere Street
Stockbridge, GA 30281

Howard D. Rothbloom
The Rothbloom Law Firm
31 Atlanta Street
Marietta, GA 30060

Nancy J. Whaley
Standing Chapter 13 Trustee
Suite 120, SunTrust Garden Plaza
303 Peachtree Center Avenue
Atlanta, GA 30303

Ryan J. Williams
Office of Nancy J. Whaley
Standing Chapter 13 Trustee
Suite 120, SunTrust Garden Plaza
303 Peachtree Center Avenue
Atlanta, GA 30303

Neil C. Gordon
Chapter 7 Trustee
171 17th Street NW, Suite 2100
Atlanta, GA 30363